Good morning, Your Honors. John Ballas on behalf of Margarito Caballero Ramirez. Could you guys sort of allocate your time? We just split it five minutes each. Okay. And if there's any time left for rebuttal, we'll just fight over it then. So when that says 15, you're finished. Yes. My main argument is that the evidence was insufficient for any rational juror to conclude, beyond a reasonable doubt, that Mr. Caballero was a knowing participant to this conspiracy that culminated in the seizure of four pounds of methamphetamine at a Walmart parking lot in 2007. The investigation was ongoing for about two or three months before then. Mr. Caballero never came up. The undercover informant was negotiating in contact with three other defendants in this case. There was some surveillance going on. He was never present. Mr. Caballero, other than the date in question, was never on any tape phone calls. There's no fingerprints, no evidence linking him to the drugs. Instead, the government's theory is that he was in a separate car that was essentially a lookout or was going to provide security for Mr. Alvarado and the drug deal that he had with the undercover informant. And our position is that the evidence was too ambiguous, it was too weak, and it wasn't sufficient to link him to the conspiracy, and especially conspiracy involving drugs. Essentially, the government's evidence really had kind of two parts to it. One was this driving pattern in meeting with Mr. Alvarado and that he was present and Mr. Alvarado came to his car that he was in, which was the Chevy Silverado, and spoke to someone in the car shortly before the drug deal and that he was in a position to be able to provide a lookout for Mr. Alvarado. And also evidence of phone contacts with Mr. Alvarado beforehand. And the multiple – Counsel, I'm sorry to interrupt, but one question just about your Rule 29 motion or lack thereof at the close of the government's case. Can you just help me understand that? Because it might matter in my mind for this case whether we can take into account the evidence that the government introduced on rebuttal. Yes. So – The reason is that the Court should be limited to the evidence at the end of the government's case in chief. And the reason is, is that right at that point, they started to discuss motions. They mentioned Rule 29 motions, and then the Court kind of cut them off because they had the jury waiting and the jury was going to come back soon, and said, I'd rather you wait. We'll discuss the motions later when all the evidence is in. And everyone went along with that, and then the jury was called in immediately after that, and they started a defense case. So were you trial counsel or no? I was not. So did trial counsel for your client make a Rule 29 motion at the close of the government's case or not? No one made a Rule 29 motion. They discussed the Rule 29, the possibility of making Rule 29. The judge asked them to defer. Then at the close of all the evidence, that's when they made the Rule 29 motions. In that discussion about the Rule 29s, did Mr. Caballero's lawyer indicate that he wanted to make a Rule 29 at that time? Well, he joined in the motions the other attorneys had brought. And it was kind of clear he was going to join. In fact, he did join at the end when the motion was made, the Rule 29 motion. And he had joined, and there was a couple other motions, not a Rule 29 motion. I think he had to do a discussion with jury instructions. So they didn't – he didn't really get – didn't get a chance to make a Rule 29 because the judge kind of cut them off. But – and this happens a lot, you know, when the jury is waiting where they don't want to take the time to argue it, and he went immediately into the evidence. And the other part that's significant on this is that when the judge issued his written decision on Mr. Herrera, he pointed out – he put it in a footnote that Mr. Herrera had made a Rule 29 motion at the close of the government's case. He basically deemed it to be made at the close of the government's case, and I think that the Court should as well with respect to all the defendants. I think I'm about at my time. So I think I will move on. Okay. Thank you, counsel. Good morning, Your Honors. Tim Warner for Ricardo Diaz. I'm addressing the intoxication issue. Your Honors, in this case, the Court abused its discretion by not giving that voluntary intoxication instruction because in its view, Diaz's testimony was self-serving. The Court did not follow the standard, which is that an instruction must be given even if there is weak, insufficient, inconsistent, or evidence of doubtful credibility. And that standard tracks the burden of proof in criminal cases, which does not put any burden on the defendant to produce any evidence or to prove his innocence. That's why we have that standard. And by the Court's not essentially following an incorrect standard, that is an abuse of discretion. Under the rules in this circuit, where the Court fails to give that instruction, there is not harmless error review, and the case has to be reversed. In your view, or in your estimation or assessment, what was the critical evidence that demonstrated that a reasonable fact finder could conclude that his ability to form the requisite intent was impaired due to his voluntary intoxication? Right. Voluntary intoxication was essentially the defense that was presented by Mr. Diaz. The evidence presented showed him drinking alcohol, becoming intoxicated. His girlfriend earlier in the day did state that she considered him drunk. His testimony was that he was intoxicated and remained intoxicated to the point that he got to Marysville and then Yuba City, where the drug transaction happened directly after that. So I think that the evidence presents such a continuous period of being intoxicated that that Well, I mean, it's one thing to have a few beers, and it's quite another thing to be really impaired. I will agree that there is no evidence Our cases seem to recognize that difference. If the Court is referring to the Washington case, I could address that. Okay. I think that the Washington case, I think that the government has misinterpreted that case, and I think that part of that is because the Washington case involved two issues, separate issues, diminished mental capacity as well as voluntary intoxication. And what happened is in that case, those two, of course, discussion on those issues is blended. And the statement about there being no evidence from a physician about ability to form generally specific intent, that, just from the way it is written, seems to relate to this diminished mental capacity. But, Counsel, I mean, what's troublesome about that case, I think, from your standpoint, is that we're nonetheless left with the facts that existed in Washington, which seem far more compelling than the facts in your case, and yet the Court there still said that the instruction didn't have to be given. I disagree that the facts are necessarily that more compelling, okay. In my case, you definitely have Mr. Diaz drinking, consuming alcohol, witnesses saying that he is drunk and him saying he's intoxicated. In that Washington case, the Court says that there were no witnesses that observed him drinking during that time period, no witnesses observing him drunk. So I don't think it necessarily is more compelling. What I think is more compelling in that case is that there is this diminished mental capacity, and that's what I think the evidence is strong of in the Washington case. It shows this man who is mentally really disturbed. So I think that the Washington case, Washington has not overruled the black letter law in this circuit, which is that even if the evidence is weak, insufficient, inconsistent or of doubtful credibility, you still get that instruction. And that rule tracks the criminal burden of proof. That's why that rule is adopted. So I think that Washington, I'm afraid, is just being misinterpreted and misapplied in this case, in my view. Okay. Thank you. Thank you. May it please the Court. My name is Bruce Locke, and I represent Jesus Valencia-Ontiveros in this case. Mr. Ontiveros was the first defendant to plead guilty in this case, and he was the only defendant that agreed to be debriefed by the government, and he was debriefed prior to the trial that was held in this case. Mr. Ontiveros's – the Court calculated Mr. Ontiveros's guideline range as 188 to 235 months, and the Court sentenced him at the high end to 235 months. The Court – it's my submission that the Court did not get – did not explain adequately why it was sentencing him at the high end of the guidelines, and that the Court is required to do that by 3553c1 to explain why at the top of the guideline as opposed to the bottom of the guideline. Which of our cases says that? There's a statute that says that, 3553. No, it says that – my understanding is that the district court judge has to give a reason for his ultimate sentencing decision. It says the reason for imposing a sentence at a particular point within the range. The only discussion that the judge gave was that he wanted it to be more than Mr. Miramontes, who was 151 months, and less than Mr. Alvarado and the others who went to trial. But 188 would have been three years higher than Mr. Miramontes. Instead, he did 235, which is seven years higher than Mr. Miramontes. And he did it to the first defendant to plead guilty and the only defendant who agreed to be debriefed. And the only prior conviction this defendant has is for giving a police officer a false ID. So there isn't anything in the record, in what the judge said, that explains why he's going so high on this defendant or why he's not doing 188, the low end of the guidelines, which in almost all cases, when you plead guilty, almost all defendants end up being sentenced at the low end of the guidelines. In addition, the district court did not consider the defense request for variances. In particular, the defense requested the court to take into account all the facts and circumstances of this defendant and of the crime itself. And the court didn't consider that at all. When I tried to raise a variance with respect to criminal history, the court cut me off and said, we're through that. I've determined that it's level 35, 188 to 235. I'm going to sentence him at the high end. And the court, in sentencing, it's required to consider all of the arguments that the defense makes as to why the sentence isn't appropriate. And I made at least six or seven different objections to the way the sentence was calculated and the way it would be applied to this defendant. One of them is the calculation that he was sentenced on was based upon the actual methamphetamine present. When he had no control over the actual methamphetamine, he was just the broker between Mr. Alvarado and the purchaser. And so there was a valid reason to just treat him, sentence him based upon the weight of the mixture, since that's what he was dealing with in negotiating with the government, the weight of the mixture. By going with the actual meth, it increases him two levels up. In addition, the court applied the gun enhancement to him based upon the fact that this was a conspiracy and that he should have foreseen that Mr. Alvarado would have a gun. But in this circuit, there is no presumption that if you're in a drug case, if you're in a drug transaction, that a gun will be present. There was no evidence that my client, Mr. Monteveros, had any knowledge about Mr. Alvarado that would indicate to him that he would have a gun. And so there is no evidence to support that enhancement. I'm going to stop there and leave the remaining time. Sotomayor, Okay. Monica Knox for Mr. Alvarado. Yes. Mr. Alvarado was the last of six defendants to be sentenced. And it is clear from the record that Judge Damrell determined that because he found that Mr. Alvarado was the most culpable of the six defendants, that he was, no matter what, going to give him at least as much time as anyone else got. Everybody else had gotten, either directly or indirectly, low end of the guidelines. That's what Judge Damrell had found repeatedly that this case was worth. When I say either directly or indirectly, it's four of them had gotten low end of their applicable guidelines. Monteveros got the high end, as you've just heard, of his applicable guidelines. But Judge Damrell, there had been the government in probation had both sought a two-level role enhancement for Monteveros, and there was a lot of discussion about that. And in the end, Judge Damrell said no, but the high end of his applicable guideline without the role enhancement was the exact same thing he would have gotten with the two-level role enhancement. Okay? So essentially, everybody got low end. But when it came to Mr. Alvarado, low end would have given him a lower sentence than the two defendants who went to trial. And Judge Damrell said over and over again he was not going to do that. The government argued probation, incidentally, wanted low end. They recommended low end for Mr. Alvarado. The government wanted a higher sentence. The government wanted what Judge Damrell gave, which was 295, based on his role. And that's what the government continued to say in its sentencing memorandum and says in its brief on appeal. But everything the government says about his role was adequately accounted for in the four-level role enhancement he got. The four-level role enhancement at the low end of the guideline range would have added over 6 years to Mr. Alvarado's sentence. It's 75 months at the low end. That already meant that his role enhancement was one-third of the sentence that he was going to get in this case. By what analysis is that insufficient to account for his role? There are several things about his role that you need to remember. One is that he wasn't even involved in this conspiracy until the last few days of a four-month conspiracy. He supervised and directed five, but he wasn't directing hundreds or scores. He got the greatest role enhancement possible, and yet he wasn't directing hundreds or scores. He's not a drug kingpin. While he – and the most important point, I think, is that while he recruited the Díaz's and Caballero, they alone made their own choices to participate. He – there is absolutely no evidence that he coerced them, even enticed them with anything. Great. He asked them, and they agreed. They're responsible for that. Moreover, that Caballero and Díaz, the only ones who got anywhere near the sentence that Alvarado ended up with, they got that because they went to trial. And at that trial, they both chose to lie. That was their choices. The guidelines, our whole sentencing system, is based on what I would refer to as punishing people for going to trial. The government utilizes that all the time, and the government says that that is fair. If it is, then why is it that the man who pleads and is eligible for acceptance because he pleads, and his guideline sentence ends up being lower than that, doesn't get what everybody else got, which was low end of the guideline range? And on the other thing about role is that when you look at what the judge and the government have said about the other defendants, there is – it is not so clear that Alvarado was that much more culpable than anyone. We do not dispute the four-level role enhancement, but in the end, Alvarado got 127 months for that role enhancement. 127 months. By the time you add in not just the 75 months he would get for the four-level role enhancement and the guideline calculation, but then where Judge Damrell put him in the guideline range in order to make up for the fact that that still didn't come out as high as the two guys who went to trial. Caballero, the government says Caballero had deep involvement and was not substantially less culpable than the others. The Court referred to Caballero as his role being essential. Miramontes, the Court referred to as the lead negotiator without whose involvement the crime would never have occurred. And the Court referred to Anteberranz as the linchpin of the deal who played an essential role. Alvarado got 127 months for that, and he got it solely because the judge was intent on giving him as much time as everybody else got. Thank you, Ms. Knox. Good morning, Your Honors. May it please the Court. Todd Pickles for the United States. I'll be arguing with respect to the arguments made by Mr. Caballero, Mr. Diaz, and my colleague will be responding to the remaining arguments. That's fine. With respect to Mr. Caballero, a couple of things, Your Honors. First, an argument was made that he didn't appear until the latter part of the conspiracy. With respect to that, we've already set forth the evidence that counter-surveillance activities are sufficient to establish membership of the conspiracy. I would note that when the deal happened, that was the first time that a large amount of methamphetamine was being provided, and the first time that Mr. Alvarado was going to be face-to-face with the CS. For that reason, the counter-surveillance and security team was part of the deal. With respect to the issue of whether or not the Rule 29 motion should encompass just the government's case-in-chief or all of the evidence permitted, I would note that the Court never instructed the parties to only make the motion at the close of all evidence, but reserve the issue for the close of the government's case-in-chief. In fact, the Court indicated, make it any time, and in fact, when the argument was actually made by Mr. Caballero's attorney with respect to the Rule 29 motion, he relied on evidence from the defense case, clearly indicating that at least for Mr. Caballero's motion, it was based on the totality of the evidence before the Court. But regardless, Your Honors, even if you confine yourselves to the government's case-in-chief, as set forth in the brief, there is sufficient evidence. Just one step back. Just on the Herrera granting of his so what do you make of the judge's suggestion that he sort of treated remarks at the close of the government's case as effectively making a Rule 29 motion? Your Honor, with respect to Mr. Herrera, two things. First, it was Mr. Herrera's counsel who actually raised the issue of bringing a Rule 29 motion at the close of the government's case-in-chief. And in part, it may well have been, and I think likely, was that the judge, Judge Herrera, did not raise that issue at the time, unlike Mr. Caballero's counsel. Second, and also unlike Mr. Caballero's counsel, Mr. Herrera's Rule 29 motion truly was focused, the argument I should say, on there is no evidence you have heard from any of the government witnesses with respect to my client's role in the conspiracy, as opposed to Mr. Caballero, who said, well, my client has testified this, or you heard from his witnesses this. And that is, I think, another critical difference. But regardless, I think the government's case-in-chief, the evidence within was sufficient. So you think the – I can't remember all the case names, but one of them, I think, is the Rodriguez case from the Second Circuit. There's sort of a line of cases not from the Ninth Circuit that, I don't know, on very similar facts, if you just confine your analysis to the government's case-in-chief, seem to say that's not enough, because you didn't show that this defendant knew the subject of the conspiracy was, in fact, narcotics. What do you make of those cases, and do you think that they're inconsistent in some way with our law? I do, insofar as this Court, in some of the cases we've cited, such as the Rescio case and others, have indicated coordinated activity is evidence of knowledge. And also, we've cited the cases that a large amount of drugs creates an inference of knowledge as to the participants. What I would say with respect to those non-Circuit decisions is, I don't know if they're exactly inconsistent, because often in those cases, you didn't have the level of involvement, or at least, for example, expert, or you didn't have the expert testimony that was presented in this case that often, in the training experience of the expert, members of a conspiracy involving a large amount of drugs will know of the object of the conspiracy. At the end, I think, with respect to what this Court has held in similar cases, with respect to this component of knowledge, the evidence here was sufficient. And to the extent that other circuits have, for whatever reason, required more, I don't think that rule applied, or should apply in this situation. In your estimation, what were the critical points along the way in Mr. Caballero's situation that would be sufficient for the jury to conclude that he well knew what he was doing? Your Honor, in addition to the expert testimony, we have the fact that in the midst of this drug deal, it's Mr. Caballero who has the conversation with Mr. Alvarado. Mr. Caballero, previously that same day, had ridden in the same car in which the drugs were later recovered. You have the fact that, additionally, although perhaps not on its own enough, we have a meth pipe found in that same truck. Mr. Caballero had purchased a lighter earlier that day. Those are the facts, just from the government's case in chief, in addition to the coordinated activity, in addition to the amount of narcotics which would establish his knowledge. And then you have the fact that Mr. Diaz, sitting right next to him, said he knew what was up. And it was Mr. Caballero, however, who was doing all the driving. Turning to Mr. Diaz, very briefly, Your Honor, with respect to this voluntary intoxication instruction, a few things. First, Judge Damrell didn't hold that it was because the testimony was self-serving that no instruction should be provided. Judge Damrell held there was no evidence of intoxication at the relevant time period. And for that reason, no voluntary intoxication instruction should be provided. And I note that, particularly with the conspiracy count, which was alleged to have begun in early February, there's evidence that Mr. Diaz joined the conspiracy days before the deal actually went down. And through this argument here, there's been no attempt to discuss the fact that he had been a member of the conspiracy long before he may have begun drinking on the day of the deal. It just so happened that that was when he fulfilled some of his bargain and did the counter-surveillance activities. With respect to the evidence of alcohol, we've set forth in the record that occurred earlier in the day. But even if the court were to find that there is evidence that, in close proximity to the actual deal happening on that day, there was consumption of alcohol, this court in Washington indicated that that isn't alone sufficient. And it's not that the government has somehow been misinterpreting Washington. We note in our papers that other courts within this circuit have similarly been interpreting Washington. But one of the cases that was cited in defendant's reply papers, the Echeveri case, also says that intoxication is not enough. In that case, it was not a sufficiency of evidence situation as presented here, but whether or not a jury instruction was misworded. But the point the court emphasized was, you can't just be drunk. You have to somehow tie that to your mental state. And that's the reason in Washington, the court addressed both of those issues, I'm sorry, diminished capacity and voluntary intoxication at the same time. Because the issue was, you hadn't shown a negated specific intent. Unless the court has any questions on those two defendants, I'll cede my time to my colleague. Okay, thank you. Good morning, your honors. May it please the court, Phil Ferrari for the United States. I'd like to address the arguments made on behalf of Mr. Ontiveros first. And I think to start with, that we need to keep in mind what the Supreme Court in Rita and this court in Cardi has set forth as the benchmark for what's an adequate explanation of a sentence. And that is, that it gives this court enough to satisfy you that he's considered the party's arguments, and that he's got a reasoned basis for the sentence that he's proposing. And this, all of the sentencing in this case, in particular, the sentencing that was held for Mr. Ontiveros was marked by thorough briefing by the parties. Mr. Ontiveros submitted not just one, but two sentencing memorandums, affidavits on his clients in both instances. The government submitted a lengthy memorandum with multiple exhibits. And the court started off the hearing by stating he had read all the parties'  Mr. Ontiveros argues that the court did not adequately explain why it was giving Mr. Ontiveros a sentence at the high end of the guideline range. But in fact, immediately after he announced he would sentence him at the high end of the guideline range, Judge Gammarell stated that he was giving him that sentence   range. And I think the Court needs to keep in mind two things with respect to Mr. Ontiveros in particular. The first is, it's true that probation recommended a role enhancement for Mr. Ontiveros. It is not the case, as was stated earlier, that the government was seeking a role enhancement for Mr. Ontiveros. We were not. In fact, in our sentencing memorandum, we recommended that the Court not apply a role enhancement for Mr. Ontiveros. We did specifically ask the Court to take into consideration, in terms of fashion and an appropriate sentence, the level of Mr. Ontiveros' involvement in this offense. Can you remind me, did you ask for a high-end sentence? Yes, we did, Your Honor. Yes. And a second point related to that, in response to the affidavits that Mr. Ontiveros submitted in connection with the sentencing memorandums, the government submitted that those affidavits provided sufficient grounds for the Court to apply an obstruction of justice enhancement. We did not ask the Court to do so, but we did ask the Court to consider that in fashion and an appropriate sentence. And, indeed, the Court stated during the sentencing hearing for Mr. Ontiveros that he thought that the statements made by him in those affidavits probably, he said, amounted to an obstruction of justice. But then he stated that he was not going to apply it. But he stated specifically that he did not think that Mr. Ontiveros was telling him the truth. And so all of that, I think, needs to be taken into consideration in terms of why the judge sentenced him at the high end of the guideline. There's an objection made that the Court did not adequately consider the argument that the sentence should be based on the mixture of the substance as opposed to the actual drug. And it's true that under Mendoza, that is something that a court can consider if a defendant did not have a basis for knowing, or basically, if there's not a basis to know, the actual amount of the substance. But this is not a case which provides a ground for going in that direction and ignoring the clear direction of the guidelines that, in fact, if the actual amount of the substance produces a higher offense level, in this case it was two levels higher, that that is what the court should do. In this case, the mixture was not abnormally rich to begin with. It was 66 percent pure. In this case, it's not as if they barely made it to the 500-gram actual benchmark for level 36. They had more than twice that amount. In this case, Mr. Ontiveros himself was involved in negotiating for this sale. And in this case, as the Court pointed out, during the course of Mr. Ontiveros' sentencing proceeding, Mr. Ontiveros was negotiating for a much higher amount. They were contemplating a deal for 20 pounds of methamphetamine as opposed to the 4 pounds that was the subject of the deal here. So based upon all of that, I think it's clear that there's a clear record that the Mr. Ontiveros was not involved in this argument, but that there was a reasoned basis for him not to adopt that. As to the issue of the firearm, there was absolutely evidence sufficient for the Court to make the finding that the possession of the firearm was foreseeable to Mr. Ontiveros. This was a large-scale transaction. It was the first time that they had dealt with this buyer. This deal took place far away from the court. It took place far away from home, on the road, late at night. It occurred in force. Six-member team, three people there for security purposes only, begging the question, how are they going to provide that security? The Ninth Circuit has held that where you've got a large amount of drugs, possession of a firearm becomes more foreseeable. The Ninth Circuit has held that where the conspirators are few in number and know each other well, there's a basis to conclude that they know their methods of operation. Here, it's worth pointing out that the government provided evidence to the Court that this was not the first transaction that Mr. Ontiveros had dealt with, and it was not the first time necessarily that he had dealt with Mr. Alvarado before either. We had calls where or taped conversations where Mr. Ontiveros, referring to his source of supply, Mr. Alvarado, when the deal didn't go forward, he said, nothing like this had ever happened to us before. Earlier, there was a call, and the government submitted this transcript as well, where Mr. Miramontes, referring to his contact, Mr. Ontiveros, he also made a statement indicating that they had previously done deals together. So the Court had a basis of knowing that there was a large amount of narcotics here involved, a first-time buyer, a highly organized delivery. There was more than enough basis for the Court to find that the possession of the firearm was foreseeable. While certainly, there was no clear error in that regard. And? The other argument was that Judge Damrell did not fairly consider the request for the multiple, several requests for a variance from the. Yes, Your Honor. From the guideline range. Well, the government submits that, and that Judge Damrell was just so over the top overly concerned with the nature of the offense and the scope of the offense that he wasn't going to listen to the request for a variance. The request for the variance, as the government understands Mr. Ontiveros's argument on appeal, it's that he asked that the Court vary on the basis of the formal objections to the guidelines that he made. That request was never put to the Court in the sentencing memoranda. It was never put to the Court at the sentencing hearing. The request that was made to vary was that, and it's actually pretty similar to an argument that Mr. Alvarado made, because these drug guidelines were not based upon or were not promulgated using empirical methods because they're quantity-driven, they overstate the offense against somebody like Mr. Ontiveros who claimed this was his first drug deal ever. That was so the point of the request for the variance that Mr. Ontiveros put before the Court was the point, was the reason he submitted those two affidavits, which were directed towards the argument that this is the first time I've ever been involved in a drug offense, I didn't have any prior involvement with these guys. The Court specifically found he did not believe that. He did not believe that on any number of levels. He took issue with a number of statements in Mr. Ontiveros's affidavit. So I think on that basis, the Court spent a large amount of time on the only request for a variance that Mr. Ontiveros fairly put before the Court at sentencing. As for Mr. Alvarado's argument, I think the argument that has been made that the Court was so obsessed with the issue of disparities that it ignored, and certainly the argument was made in Mr. Alvarado's brief, that it ignored all of the other sentencing factors that it was to consider. And the government submits that that there's no way to read through the transcript, the lengthy involved transcript of Mr. Alvarado's sentencing and come to that conclusion. The Court made very clear that it was considering specifically the 3553 factors, the nature and circumstances of the offense. He specifically referenced the dangers of methamphetamine, the dangers involved with these firearms, the fact that this was a well-thought-out, coordinated event. He specifically addressed the characteristics of the defendant. What do you do with these funny comments the Court kept making about, oh, gosh, I really hate to do this, I really don't have a choice, I wish I didn't have to do it. Things like that. And, oh, and I'm not going to rewrite the guidelines. Of course, variances do tend to rewrite the guidelines, one could say. And things like, well, there's we have mandatory minima, we have consecutive sentences, et cetera, et cetera. There's just nothing I can do here. What do we do with that? Well, Your Honor, well, first of all, I think it's important in this instance to look specifically at what the Court said. The Court never said it didn't have a choice. The Court never indicated that it was somehow restricted or bound. As Mr. Alvarado correctly concedes, it was made very clear that the Court viewed the guidelines as being advisory. As far as no question as well, when you read through the transcript, that at various points the Court did make comments indicating the difficulty in imposing this sentence. But I don't think that that necessarily translates, and I don't think this Court can view that as translating into a statement that the Court somehow did not understand the bounds of its discretion, that the Court somehow felt that anything other than the facts and circumstances of this case, of Mr. Alvarado's actions, were what were actually compelling the sentence that the Court was required or that the Court felt compelled to impose in this case. I think it's a question of context in large part in this case. This is a – this was a lengthy sentencing hearing. This was an emotional sentencing hearing. And I think Judge D'Ambrio made that clear. He referred repeatedly – he did not just refer to the dangers that Mr. Alvarado subjected the others, certainly the people in that area, to with this offense. He specifically referred to Mr. Alvarado's good qualities. He referred to his intelligence. He referred specifically to the love of his family. He referenced the fact that his family was there and it was clear that they cared for him. Judge D'Ambrio was expressing empathy for the defendant, and that is not something that we want to discourage. I think that's something that we want to encourage. He was making it clear how engaged he was in this process, and I don't think there is any basis to take those statements and read into them the idea that he somehow misunderstood the law in imposing this sentence. The Court has no further questions, though. Okay. I know the defense is used up to time, but for me, Mr. Diaz's attorney, we would ask for one minute for rebuttal each. One minute. Let's go quick. I just – on the point of making the argument, Rule 29, at the end of the government's case, the judge says, in light of the fact that there are multiple defendants, it is best to deal with the Rule 29 motions at the end of the taking of evidence. That's at Excerpt of Record 1. He clearly references multiple defendants, and then they move right directly into the – into the trial testimony. And lastly, I think Mr. – the Rodriguez case that Judge Wofford referenced, the Second Circuit case, it involved expert testimony that was exactly the same as this case, and it was on all fours with Caballero's case. Okay. Thank you. There was a – the government did mention that this wasn't an abuse of discretion or that the judge did not base this decision on it being self-serving. It's page 1400, or my Excerpt of Record, page 28, where the court does say that if there was some other evidence, I might be inclined, but the evidence presented is of a self-serving nature, and in light of all the other evidence and a lack of evidence, I don't think it's appropriate. So it does seem like that – that was a substance of his – of his concern. The government also brought up that – the government's point was that, in its view, you couldn't just be drunk, that it has to be tied to a mental state, that the drunkenness has to be tied to a mental state. And my concern is that – that this could go in the direction now of requiring a defendant to present an expert witness and essentially doing harm to the burden of proof where the defendant doesn't have to present evidence. And I think that intoxication is inherently tied to a mental state. And we have certainly minimal evidence of enough intoxication. We have one person that said he was tomato, that he was drunk. We have him drinking beers all day. We've heard that before. Gotcha. Okay. Thank you, Your Honor. Thank you very much. The matter is submitted at this time, and that ends our session for this morning. All right. Okay. All the cases that we just heard are submitted.
judges: Fernandez, Paez, Watford